OPINION OF THE COURT
Arthur M. Diamond, J.
Decision after Hearing
The petition presented in this Mental Hygiene Law article 81 guardianship proceeding raises two questions that this court has not previously addressed. The first is whether it is appropriate for a facility to petition the court solely for the appointment of a special guardian of the property of an alleged incapacitated person residing in its facility where the sole power sought is to complete the Medicaid application for the facility. The second question that follows is, then, where there is no health care proxy executed by the alleged incapacitated person does the Family Health Care Decisions Act (L 2010, ch 8, as amended) vitiate the need for a personal needs guardian. Here the court finds that a residential facility/hospital should not petition the court for the appointment of a special guardian for the sole purpose of seeking Medicaid benefits when the patient is clearly incapacitated and clearly needs a guardian of the person as well. For the reasons stated herein the court finds that the Family Health Care Decisions Act is not a substitute for the appointment of a guardian of the person pursuant to article 81 of the Mental Hygiene Law.
The petitioner herein is the administrator of the A. Holly Patterson Extended Care Facility located at 875 Jerusalem Ave *588 nue, Uniondale, New York where the alleged incapacitated person, AG, currently resides. He had been taken there after being treated at Nassau University Medical Center for a cerebral vascular accident (also known as CVA). AG is 80 years old and suffers from right hemiparesis, cognitive deficits, and seizure disorder, as well as dementia. He requires a gastrointestinal feeding tube for nutrition due to dysphagia, and is incontinent of bowels. He is bed bound and needs assistance with all activities of daily living. However, the court evaluator indicated in his report to the court that AG had the ability to communicate his wishes and therefore the hearing was held at the facility and AG was present.
Petitioner originally limited its application under article 81 of the Mental Hygiene Law for the appointment of a special guardian of the property while acknowledging in its application that AG is an incapacitated person. When the court inquired prior to the hearing as to why petitioner did not also move for the appointment of a guardian of the person, petitioner stated that it believed it was not necessary because DA, a son of the alleged incapacitated person, had been located locally and it was the facility’s position that because a surrogate was available the Family Health Care Decisions Act allows for that surrogate to make all medical decisions for adult patients as needed. Further, even if no surrogate had been found the petitioner’s stated position was that under the Family Health Care Decisions Act the hospital may make medical decisions for the patient. Therefore, a personal needs guardian was not needed.
The Family Health Care Decisions Act is relatively new legislation. The legislative history of this act indicates the law was passed in order to fill a gap in the law for those individuals who do not have an appointed health care proxy agent because the individual never executed a health care proxy. “This legislation fills a gap that remains in New York law. . . . This legislation establishes a procedure to facilitate responsible decision-making by surrogates on behalf of patients who do not have capacity to make their own health care decisions.” (L 2010, ch 8, § 1, reprinted in McKinney’s Cons Laws of NY, Book 44, Public Health Law art 29-CC at 324.) Section 2994-d of the Public Health Law identifies the surrogate who will make health care decisions for the adult patient. The section provides that “[o]ne person from the following list from the class highest in priority when persons in prior classes are not reasonably available, willing, and competent to act, shall be the surrogate for an adult *589 patient who lacks decision-making capacity.” (Public Health Law § 2994-d [1].) The list, in order of priority, reads as follows:
“(a) A guardian authorized to decide about health care pursuant to article eighty-one of the mental hygiene law;
“(b) The spouse, if not legally separated from the patient, or the domestic partner;
“(c) A son or daughter eighteen years of age or older;
“(d) A parent;
“(e) A brother or sister eighteen years of age or older;
“(f) A close friend.” (Public Health Law § 2994-d [1].)
Of note, the highest priority in surrogate designation is the guardian appointed by the court pursuant to article 81 of the Mental Hygiene Law. The scope of authority of the surrogate is limited to making any and all health care decisions on the adult patient’s behalf that the patient could make and only after an attending physician has determined that the patient lacks decision-making capacity (Public Health Law § 2994-d [3] [a] [i]; m.
Upon a patient’s admission to a hospital, that facility has to establish whether or not a patient has a surrogate. Hospitals have to establish decision-making standards and procedures for routine and major medical treatment for adults who lack a surrogate under the statute, and lack capacity for decision making for routine medical treatment (Public Health Law § 2994-g [3] [b]) and major medical treatment (Public Health Law § 2994-g [4] [b]). According to the Family Health Care Decisions Act, the hospital is the last resort “for adult patients who would qualify for surrogate decision-making under [Public Health Law article 29-CC] but for whom no surrogate is reasonably available, willing or competent to act.” (Public Health Law § 2994-g [2] [a].) However, to rely upon this statute as a replacement for a proceeding for the appointment of an article 81 guardian leaves an incapacitated person as defined by Mental Hygiene Law § 81.02 without protection. Under the Family Health Care Decisions Act, there is a presumption that an adult has decision-making capacity “unless determined otherwise . . . pursuant to court order, or unless a guardian is authorized to decide about health care for the adult pursuant to article eight-one of the mental hygiene law.” (Public Health Law § 2994-c [1].) *590 Furthermore, that statute further provides that even if the hospital makes a determination that a patient lacks decision-making capacity,
“the patient’s objection or decision shall prevail unless: (a) a court of competent jurisdiction has determined that the patient lacks decision-making capacity or the patient is or has been adjudged incompetent for all purposes and, in the case of a patient’s objection to treatment, makes any other finding required by law to authorize the treatment” (Public Health Law § 2994-c [6]).
Therefore, a hospital’s determination that a patient lacks decision-making capacity can be overridden by an incapacitated person who has not been deemed such by the court under article 81 of the Mental Hygiene Law. In such a case, both the hospital, and the surrogate (if a surrogate is available), are unable to make any medical decisions on behalf of the patient unless the surrogate is a guardian appointed under article 81 of the Mental Hygiene Law. It is clear that under the Family Health Care Decisions Act, a surrogate on the list, and also the hospital itself, do not have the same authority as a court appointed guardian to make medical decisions on behalf of a patient who objects to medical treatment.
Furthermore, for the movant to state that the Family Health Care Decisions Act renders the appointment of a guardian under article 81 of the Mental Hygiene Law unnecessary ignores the whole panoply of powers that a guardian of a person has for the protection of an incapacitated person as delineated under Mental Hygiene Law § 81.22, such as the ability to change the place of abode of an incapacitated person. The guardian’s powers under Mental Hygiene Law § 81.22 far exceed the authority given to a surrogate under the Family Health Care Decisions Act, which is limited to making medical decisions on behalf of the patient.
Based upon the foregoing, it should be clear that the legislative intent behind the enactment of the Family Health Care Decisions Act was for the express purpose of filling the gap where a person does not have a designated health care agent by executing a health care proxy. It is this court’s opinion that the Family Health Care Decisions Act was clearly never meant to be a replacement for a court appointed guardian under article 81 of the Mental Hygiene Law. This court finds that any residential facility, such as petitioner, which commences a guardianship *591 proceeding under article 81 of the Mental Hygiene Law claiming a person is incapacitated should not limit its application to a special guardian of the property for purposes of Medicaid applications and payment of outstanding debt, but should also move for a guardian of the person. In these circumstances where an individual is in need of a guardian of any type and there is no health care proxy or power of attorney, the court must protect that individual’s interests as though they were its own. Hospitals acting as both caregiver and medical decision maker for incapacitated persons in their care may have an inherent conflict of interest in making those decisions, which decisions the legislature has allowed as the last resort when there is no surrogate available. In this proceeding, the court has not limited its determination to petitioner’s application for special guardian of the property, but has rendered a determination as to whether the alleged incapacitated person also needs a guardian of the person.
Accordingly, after a hearing held on August 3 and 12, 2012, the court hereby finds that it has obtained in personam and subject matter jurisdiction over AG, who currently resides at A. Holly Patterson Extended Care Facility, 875 Jerusalem Avenue, Uniondale, New York 11553 and who is 80 years of age. The record reflects that he has difficulties with cognitive functions and has been diagnosed with hemiparesis, cognitive deficits, and seizure disorder, as well as dementia. He requires a gastrointestinal feeding tube for nutrition due to dysphagia, and is incontinent of bowels. He needs assistance with all activities of daily living.
From said evidence, it is clear to the court that AG has certain functional limitations which impair his ability to manage his own personal needs and property, that he cannot fully understand such inability and, further, that he may suffer harm and danger if a guardian is not appointed on his behalf.
Viewing the record in its entirety and this hearing having been conducted pursuant to article 81 of the Mental Hygiene Law and this court, having heard the proof and reviewed the petition and supporting papers together with the report and testimony of the court evaluator, hereby finds by clear and convincing evidence that AG is an incapacitated person as defined under section 81.02 of the Mental Hygiene Law in that he is not able to provide for his own personal needs and property management.
It is, therefore, the decision of this court that a guardian of the person, and special guardian of the property shall be ap *592 pointed and, based upon the evidence produced and the recommendation of the court evaluator, it is the court’s determination that the most appropriate and suitable individual to serve as guardian of the person is DA, and the party best to serve as special guardian of the property is petitioner.
The order and judgment to be submitted herein shall provide for the guardians to have all those powers requested in the moving papers, as authorized under sections 81.16 and 81.22 of the Mental Hygiene Law, and to make any and all decisions consistent with the functional limitations of AG, and which decisions are obviously in his best interest and welfare.
The special guardian of the property shall exercise those powers specifically enumerated in paragraph 9 of the verified petition.
The guardian of the person shall exercise those powers enumerated under Mental Hygiene Law § 81.22, with the exception that change in place of abode shall require approval by the court.
If the special guardian deems it appropriate, in addition to establishing a luxury account in the maximum amount allowed by the Nassau County Department of Social Services, he shall also be authorized to use the guardianship funds for the purpose of establishing an “irrevocable funeral trust” with a reputable funeral establishment in the State of New York for future burial expenses.
The appointment of the guardian of the person herein shall be for an indefinite duration upon the filing of a designation.
The duration of the appointment as special guardian shall be until the special guardian is discharged by the court after the duties enumerated above have been completed, and the filing of a report to the court by the special guardian on all matters done pursuant to the order of appointment.
The guardian of the person shall be required to visit with AG not less than six times a year. The guardian of the person and special guardian shall complete a training program in accordance with section 81.39 of the Mental Hygiene Law, which training program is now available online at the website http:// www.nycourts.gov/courts/10jd/nassau/guardianship.shtml.
In addition to the foregoing findings, the order and judgment shall also provide for compensation to the guardian and special guardian which shall be fixed in the further orders of the court from time to time.
*593 It shall also provide for compensation to be paid from the guardianship account, if any funds are available, to the petitioner’s attorney and to the court evaluator. Both shall be required to serve and file an affidavit of services prior to the entry of the order and judgment, as to any and all services performed in this article 81 proceeding, up to and through the issuance of the commission to the guardian.
Based on all of the foregoing, the petition is granted in accordance with this court’s findings as spread on the record, and the order and judgment shall be settled on appropriate notice to the interested parties by the petitioner. A stenographic record of this court’s decision shall accompany the proposed order and judgment.